CITIZENS' SAVINGS BANK OF OLIN v. P. H. WOOD, Appellant.

**Payment:** APPLICATION. A debtor has no authority to direct the
1   application of an involuntary payment arising from the fore-
    closure of a chattel mortgage.

**Chattel Mortgages:** FORECLOSURE: APPLICATION OF PROCEEDS. A
2   mortgagee of personal property should apply the proceeds
    arising from a sale on foreclosure to the satisfaction of the

mortgage debt, and not to the extinguishment of a landlord's claim for rent which he may hold by assignment.

**Same.** A tenant cannot insist that the proceeds arising from a sale of nonexempt property under the foreclosure of his chattel mortgage, shall be applied to the satisfaction of a landlord's claim for rent covering exempt property, which is also held by the mortgagees, so as to clear the exempt property from that liability for the benefit of the tenant.

*Appeal from Jones District Court.*— HON. J. H. PRESTON, Judge.

THURSDAY, MAY 9, 1907.

ACTION for rent. Judgment was entered *in rem.* Defendant appeals.— *Affirmed.*

*Jamison & Smyth* and *Park Chamberlain,* for appellant.

*Ellison & Gorman,* for appellee.

LADD, J.—One Dalby had rented his farm of three hundred and sixty acres to the defendant Wood for a term of three years, beginning March 1, 1902, at the annual rental of $1,070. On the 31st day of December, 1903, Wood executed a mortgage covering certain cattle and hogs thereon to secure an indebtedness of $1,593.75 to one Snyder, and on January 2, 1904, he executed another mortgage on fourteen horses also on the premises to secure an indebtedness of $996.25 to plaintiff. Dalby began an action to recover a balance of the unpaid rent for 1903, amounting to $515, on July 27, 1904, aided by a writ of attachment which was levied on the above horses. With the evident purpose of avoiding the enforcement of the landlord's lien against the property covered by their mortgages, plaintiff and Snyder acquired the lease of Dalby by assignment in August, and the attorney of the latter dismissed the action. During the same month plaintiff and Snyder

took possession of the live stock covered by their respective mortgages, and sold the same as provided therein; the former realizing therefrom $932.55 and the latter $1,009.30. In the same month Wood was adjudged a bankrupt, and as such was discharged by the District Court of the United States in May of the following year. In the meantime the trustee in bankruptcy took possession of the crops raised on the premises, and, after setting aside to defendant that portion exempt to him as the head of a family, out of the proceeds paid plaintiff and Snyder on the rent $1,267.53. Unless the proceeds of the property covered by the mortgages should have been applied in satisfaction of the rent, there was a balance of $417.47 still owing for rent. Of this two-fifths, or $166.98, belonged to plaintiff, and for this amount recovery is sought. The action was aided by writ of attachment levied on the crops raised upon the demised premises and set aside to the defendant as above indicated. The defense interposed was that, as the landlord's lien was prior to that of the mortgages on the property covered thereby, the proceeds of the sale thereof should have been applied in satisfaction of the rent first, and that, in any event, this should have been done in a sufficient amount to have relieved that portion of crops exempt to defendant as the head of a family. The trial court held otherwise, and the sole question raised by the record is whether this ruling was correct.

The action by Dalby and its dismissal is of no importance, save as explaining the transfer of the lease, and the only significance of the proceedings in bankruptcy is that

1. PAYMENT: application. thereby personal judgment was obviated. It is well settled that the debtor may not direct the application of involuntary payments. Such are those procured through the foreclosure of chattel mortgages. *Tolerton v. Roberts,* 115 Iowa, 476.

And the creditors must have applied the proceeds of the foreclosure sale on the debts secured by the mortgages.

The debtor, Wood, had pledged the horses to the payment

2. CHATTEL MORT-
GAGES: fore-
closure: ap-
plication of
proceeds.

of his indebtedness to plaintiff, and the cattle and hogs to the payment of that of Snyder, and thereby assented to the application of the proceeds of foreclosure thereon. The superiority of the lien for rent was by operation of law, and not owing to any reservation on his part. Had Dalby retained the lease, he might have allowed the stock to be taken and sold under foreclosure without waiving his landlord's lien on the crops. He did not owe the debtor the duty of enforcing his claim for rent against any particular property. In so far as the tenant's rights were involved, he might allow other debts to be made out of the property on which he had a lien. The remedy by attachment is not compulsory, and the landlord may proceed to enforce his lien at pleasure if within the statutory period, or may resort to another remedy as he may choose. *Miller v. White,* 25 S. C. 235. Should the tenant dissipate a large part of the property, he may proceed against that which remains as against other incumbrances. *Hammond v. Harper,* 39 Ark. 248. While the landlord may not perpetrate active injury to a junior incumbrance, he is under no obligation to husband the tenant's property for his benefit or that of the tenant. He may look alone to his own interest, and be content to see enough remaining for his security. *Lemay v. Johnson,* 35 Ark. 235. Certainly he does not owe the tenant the duty of enforcing his lien against all or any specific portion of the property. The doctrine of marshaling assets or securities is in no way involved for this equity is never administered at the suit of the debtor. *General Ins. Co. v. U. S. Ins. Co.,* 10 Md. 517 (69 Am. Dec. 174). Had the mortgagees, instead of procuring an assignment of the lease, insisted upon Dalby collecting the rent from other property on which it was a lien, quite a different question would have arisen. But they procured the lease, and through its assignment stepped into Dalby's shoes, and were under no other or greater obligation to enforce the collection of the

rent than he would have been had he retained it. The mere fact that the mortgagor expressed indifference as to what should be done with the property cannot change the result. Having seized it under the mortgages and sold it by virtue thereof, in the absence of any understanding to the contrary, the mortgagee was required as a matter of law to apply the proceeds as stipulated in those instruments. Having resorted to the remedy for the collection of the debts stipulated by the parties, it was not open to them to otherwise apply the proceeds. See *Marziou v. Pioche,* 8 Cal. 522; *Avera v. McNeill,* 77 N. C. 50. Nor is the mortgagor after having so stipulated in a situation to urge that the proceeds of the sale should have been otherwise applied. As plaintiff and Snyder as assignees of the lease then were under no obligation to enforce the landlord's lien against the mortgaged stock, and might elect to do so against any other property subject thereto, it follows that the defense interposed must fail.

What has been said disposes of the point that the proceeds of all the property should have been so applied as to shield that exempt to defendant as the head of a family, and that as the portion of the crops now levied on were exempt from any indebtedness, save the lien for rent, enough of the proceeds of the stock sold should have been applied on the rent to clear such exempt property. Possibly, if the mortgages had covered exempt and nonexempt property, the debtor might insist upon the nonexempt property being first sold. *Sanders v. Phillips,* 62 Vt. 331 (20 Atl. 104.) See, also, *Frantz v. Hanford,* 87 Iowa, 469. But the hay and grain attached, having been raised on the leased premises, was not exempt from the claim for rent. *Hipsley v. Price,* 104 Iowa, 282. The plaintiff and Snyder had waived the landlord's lien on the stock by foreclosing their mortgages thereon, as they had the right to do, and, as seen, this did not operate to release the remainder of the property subject thereto. Especially is this true

3. SAME.

where, as in this case, such waiver was in promotion of the tenant's stipulation setting apart the stock as the security of other claims. The rule with reference to exhausting other security before selling the homestead has no application.

The relief granted was within the prayer of the petition, and the judgment is *affirmed*.