### BROWN v. ALLEBACH et al.

#### (Circuit Court, E. D. Pennsylvania. October 26, 1910.)

#### No. 10.

JUDGMENT (§ 656*)—VALIDITY—VACATION—JURISDICTION.

> In a suit in equity in the federal court to wind up an insolvent corporation, the receiver was directed to collect an assessment on the stockholders; and he filed a bill in equity for that purpose against stockholders, including petitioner. The bill was demurred to on the ground that the receiver's remedy was at law and not in equity; and, the demurrer having been overruled, judgment was rendered against petitioner for failure to answer, from which he did not appeal. Other stockholders appealed, and in their appeal it was held that the receiver's action was at law and not in equity. *Held*, that petitioner, not having moved to strike off the decree during the term and not having appealed within six months, judgment became final, as the court had jurisdiction; the judgment not being void by reason of the court's erroneous decision that the remedy was in equity and not at law.
>
> [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1167; Dec. Dig. § 656.*]

In Equity. Suit by Arthur K. Brown, as receiver of the American Alkali Company, against Edwin S. Allebach and others. On petition of Augustus T. Ashton to strike off the judgment against him for stockholder's liability. Denied.

See, also, 156 Fed. 697, and 166 Fed. 488.

Burr, Brown & Lloyd, for complainant.
Victor Frey, for defendant Ashton.

HOLLAND, District Judge. In this case the court authorized the surviving receiver, whom it had appointed, to institute a bill in equity against all the stockholders of the American Alkali Company, an insolvent corporation, for the collection of an assessment on shares of stock which were standing in the name of Mr. Ashton, the petitioner, and others on August 31, 1905. After the subpœna and bill were served upon the petitioner, he, together with a number of other defendants, demurred thereto, and assigned as one of the causes of demurrer that the court had no jurisdiction to entertain the bill, because there was no right on the part of the complainant to go into a court of equity for the purpose of collecting the assessment, and insisted that the proper remedy was by a suit at law against the individual stockholders, who had failed to pay this assessment. This petitioner's demurrer, and those filed by the other defendants in the bill, were overruled by this court in an opinion filed, in which it was held that the court had jurisdiction in equity, and subsequently judgment was entered against these defendants who had not appealed or answered the bill, including the petitioner, Mr. Ashton, against whom a judgment was entered on the 3d day of January, 1908, for the sum of $138.09, with costs. Of the defendants in the bill, the Fidelity Trust & Safe Deposit Company and others, executors of Joseph F. Sinnott, deceased, filed their appeal from the decision of this court overruling.

the demurrer, and after argument the Circuit Court of Appeals of the Third Circuit reversed the judgment of this court, and directed that the bill be dismissed as to the appellants in that appeal, with costs, because the suit should have been at law and not in equity. See Fidelity Trust & Safe Deposit Co. et al.; Executors of Joseph F. Sinnott, Deceased, v. Archer, 179 Fed. 32.

Mr. Ashton, the petitioner here, took no appeal from the decision of the lower court overruling his demurrer to its jurisdiction in equity, and the time for filing such an appeal has long since expired. The term of court at which the judgment for $138.09, with costs, was entered against Mr. Ashton, ended on July 3, 1908, and he did nothing until the 25th day of May, 1910, when he presented this petition, asking that the judgment of $138.09, with costs, entered against him on the 3d day of January, 1908, "be stricken off." Can this court dispose of this judgment in this summary way, nearly two years after the expiration of the term of court at which it was entered? The court clearly had ancillary jurisdiction to entertain a suit against Ashton to collect the assessment in some form, entirely apart from the fact of diversity of citizenship, which also existed.

In White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67, the question submitted to the Supreme Court of the United States was:

"Had the Circuit Court of the United States in a general creditors' suit, properly pending therein, for the collection, administration, and distribution of the assets of the insolvent corporation, the power to hear and determine an ancillary suit instituted in the same cause, by its receiver in accordance with its order against debtors of such corporation, so far as in said suit the receiver claimed the right to recover from any one debtor a sum not exceeding $2,000?"

This question was answered in the affirmative. That answer is conclusive as to this question in this case. This court did have the requisite federal jurisdiction of a suit against Ashton to collect the assessment. The opinion of the Circuit Court of Appeals in the Sinnott Case does not question this. It merely holds that a bill in equity is not the proper form in which Ashton and the others should have been sued. The most that the petitioner can contend, therefore, is that, while this court had jurisdiction, he should have been sued at law. We do not think, however, that contention entitled him to have the decree stricken off at this late day. Upon the entering of this decree against Mr. Ashton, there was one of two courses open to him: First, he might within the term have applied to this court to modify, alter, or strike off this decree, if he then thought there was ground for such action; or, second, he might have within six months taken his appeal. He did neither of these things, and it is now urged by the receiver that the judgment entered against Ashton is final.

The law as to the control of federal courts over their judgments or decrees is stated in the case of Bronson v. Schulten, 104 U. S. 415, 26 L. Ed. 797, as follows:

"It is a general rule of law that all the judgments, decrees, and other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court. But it is a rule equally well established that after the term has ended all final judgments and decrees of the court pass beyond

its control, unless steps be taken during that term by motion or otherwise to set aside, modify, or correct them; and, if errors exist, they can only be corrected by such proceedings by a writ of error or appeal, if any be allowed, in a court which by law can review the decision. So strongly has this been upheld by this court that, while realizing that there has been no court which can review its decision, it had invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is based upon the ground that the case has passed beyond the control of the court."

See other cases cited by the court.

In Phillips v. Negley, 117 U. S. 674, 6 Sup. Ct. 905 (29 L. Ed. 1013) the court, quoting from Sibbald v. U. S., 37 U. S. 488, 9 L. Ed. 1167, says:

No principle is better settled * * * or of more universal application than that no court can reverse or annul its own final decrees or judgments for errors of fact or law after the term in which they have been rendered, unless for clerical mistakes; * * * from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing"—citing other cases.

The petitioner, however, contends that, notwithstanding the general rule, as above stated, that where a judgment is absolutely void for want of jurisdiction the court may direct that it be stricken from the records, even after the term at which the judgment was entered, and in support of this proposition, in addition to the cases decided in some of the state courts, the petitioner cites the cases of U. S. v. Wallace (D. C.) 46 Fed. 569, and Thomas v. American Freehold Co. (C. C.) 47 Fed. 550, 12 L. R. A. 681.

It has been repeatedly held that the federal courts will adhere to their own decisions in regard to their own judgments, so that the practice in the state courts, as indicated by their decisions, can be of little value in the determination of this case. It may be conceded that a judgment absolutely void for want of jurisdiction may, under certain circumstances, be stricken from the records, even after the term at which the judgment was entered. This judgment cannot be said to have been absolutely void ab initio. The court undoubtedly had jurisdiction to entertain a suit against Ashton to collect the assessment. The lower court, however, upon a consideration of this question as to whether it should be at law or by bill, determined that it had jurisdiction in equity to collect the assessment. If, as it subsequently appeared by the appeal of another, a suit at law was the proper proceeding, yet the lower court had a right to decide the question as to whether or not it had jurisdiction in equity, and, having so determined, the decision was valid and operative as to Ashton, who failed to take the proper steps in due time to question its correctness. Ashton failed to appeal or answer, and judgment was taken against him in the equity proceeding for want of an answer. A mistake in law that a suit was of equitable jurisdiction when the remedy was one at law is not absolutely void. The general rule is stated in 17 Amer. & Eng. Ency. of Law, p. 1070:

"The fact that the form of action adopted was not the proper one does not render a judgment void."

It would seem that the opinion of Justice Harlan, in Mellen v. Moline Iron Co., 131 U. S. 367, 9 Sup. Ct. 786, 33 L. Ed. 178, is conclusive of the question. In that case he said:

"It is, however, contended that the furnace company could not rightfully invoke the aid of a court of equity to remove this lien or incumbrance until it had, by obtaining a judgment for its debt and issuing execution, exhausted its legal remedy. But that was one of the questions to be determined in the suit brought by that company, and any error in deciding it would not authorize even the same court in an original independent suit to treat the decree as void. * * * An adjudication that a particular case is of equitable cognizance cannot be disturbed by an original suit. Such an adjudication is not void, if erroneous."

The two federal cases cited by the petitioner fail to support his claim to have the judgment stricken from the record.

In U. S. v. Wallace, supra, the court held it had jurisdiction to determine whether a judgment rendered by it at a previous term is void, but finally decided the petitioner's application against him on its merits. And in the case of Thomas v. American Freehold, etc., Co., supra, while the judgment was summarily stricken from the record because it was absolutely void, the court in its opinion proceeded to point out, with great clearness, the distinction between a case where the judgment was absolutely void and such a case as presented by the petitioner at bar. On page 558, of 47 Fed. (12 L. R. A. 681) it was said:

"The case of Mellen v. Iron Co., 131 U. S. 367 [9 Sup. Ct. 781, 33 L. Ed. 178]. would seem at first glance opposed to this view. It was there held, Mr. Justice Harlan delivering the opinion of the court, that an adjudication that a particular case is of equitable jurisdiction is not void, even if erroneous, and cannot be disturbed by a collateral attack. This, however, was an adjudication that the court had equitable powers. If it had them not, it had yet the right to decide that question. That decision was valid and operative until set aside for error. There was, in other words, a regular adjudication of the court that it had jurisdiction. That is very different from a case like that before the court here, when no such question was presented or decided, and where the court, on motion of the plaintiff's attorney, proceeded to exercise powers which were expressly withheld from it in the laws by which it was organized."

It will be seen that this case fails to support the petitioner's claim, as the case at bar is within the principle laid down in Mellen v. Iron Co., supra.

The petitioner's rule on the receiver to show cause why the judgment should not be stricken from the record is dismissed.